IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| RHONDA SMITH,<br><br>                          *Plaintiff,*<br><br>v.<br><br>IRONWORKS DEVELOPMENT LLC,<br><br>                         *Defendant.* | CASE NO. 3:22-cv-20<br><br>OPINION<br><br>JUDGE NORMAN K. MOON |

This case concerns Plaintiff Rhonda Smith, a former employee for Defendant Ironworks Development LLC. Defendant suspended and then terminated Plaintiff from her position for failure to comply with its COVID-19 vaccination policy. This came after she submitted an accommodation based on sincerely held religious beliefs. Plaintiff brings the following claims: (1) disparate treatment discrimination under Title VII, (2) disparate impact discrimination under Title VII, (3) disparate impact from failure to reasonably accommodate under Title VII, (4) disparate treatment from failure to reasonably accommodate under Title VII, (5) disparate treatment discrimination under the Virginia Values Act, (6) disparate treatment from failure to reasonably accommodate under the Virginia Values Act, and (7) discriminatory classification on the basis of sincerely held religious beliefs under the Virginia Values Act.

The issue now before the Court is whether Plaintiff's employment agreement requires these claims be submitted to arbitration. The Court construes Defendant's motion to dismiss because of Plaintiff's agreement to arbitrate as a motion to stay litigation and compel arbitration. Due to the arbitration provision in the employment agreement, this motion will be granted.

    **I.**        **THE COMPLAINT**

The following facts are alleged in Plaintiff's Complaint and assumed true for purposes of resolving this motion. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016) (reiterating the appropriate standard of review).

Plaintiff seeks damages, declaratory relief, and injunctive relief under Title VII of the Civil Rights Act of 1991 and the Virginia Values Act, Va. Code § 2.2-3905. Dkt. 1 ("Compl.") ¶ 4. Plaintiff "was formerly employed with Defendant as an executive assistant." *Id.* ¶ 1. "At all times relevant herein, Defendant was an employer as defined in 42 U.S.C. § 2000e and Va. Code § 2.2-3905." *Id.* ¶ 3.

Plaintiff worked remotely for Defendant starting in March 2020, because of COVID-19. *Id.* ¶ 8. In 2021, Defendant chose "to adopt a policy requiring COVID vaccination of all of its employees on or before July 1, 2021." *Id.* Defendant's chief executive officer announced the policy during a January 2021 meeting, at which Plaintiff and Defendant's executives were in attendance. *Id.* ¶ 9. Defendant's chief executive officer had been "advised that [the policy] violated the law," and "[h]e told the group he did not care if an employee sued." *Id.* Defendant "denied every accommodation request received from approximately 13 employees." *Id.* ¶ 10. And Defendant "failed to engage in the interactive process required by law." *Id.*

Plaintiff submitted an accommodation request to Defendant, based in her "sincerely held religious belief that compelled her to reject the COVID vaccines available as the emergency use authorization vaccines that were available [which] to that point all employed in their development or testing fetal cells derived from an aborted fetus." *Id.* ¶ 11. She also "told Defendant that she would get a vaccine that was not so compromised once it became available and would comply with personal protective equipment, social distancing, and testing in the interim." *Id.* Defendant rejected Plaintiff's request without providing any reason. *Id.* ¶ 12.

Defendant "made no effort to engage in the interactive process with Plaintiff." *Id.* Defendant also "presented no justification that Plaintiff's reasonable accommodation request presented an undue hardship." *Id.* ¶ 13.

Due to Plaintiff refusing to receive a COVID vaccination, "Defendant suspended Plaintiff on July 1, 2021, and then terminated her on July 14, 2021." *Id.* ¶ 14.

At the time Plaintiff was suspended and terminated, Defendant had no physical office space. *Id.* ¶ 15. Consequently, "there was no physical location from whence Plaintiff could work and her work was fully remote." *Id.* Further, at that time, all of Defendant's employees based in Virginia, like Plaintiff, "were working remotely, had been working remotely, and would be working remotely for the foreseeable future." *Id.* ¶ 16. Plaintiff also alleges that "Defendant still does not have a physical office location, and all of its Virginia-based employees continue to work remotely." *Id.* ¶ 17. Moreover, "[a]fter Plaintiff's termination, Defendant advertised her position and described it as a fully remote position." *Id.* ¶ 18.

Plaintiff claims that she suffers damages from the above occurrences. These include "emotional pain and suffering, wounded feelings and mental anguish, loss of wages, future pecuniary loss, and other damages." *Id.* ¶ 21.

## II. RELEVANT CONTRACTUAL PROVISIONS

Plaintiff asserts claims arising out of her former employment with Defendant. Defendant argues that these claims are subject to a binding arbitration agreement included in Plaintiff's employment agreement. Article V, Section 6(a) of the employment agreement, Dkt. 19, Ex. A at 8, addresses arbitration. It states:

> Any dispute, claim, or controversy arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation, or validity of this Agreement, including the

determination of the scope or applicability of this agreement to arbitrate, will be determined by binding arbitration held in the State of Virginia before a neutral arbitrator. The arbitration will be administered by JAMS under its Streamlined Arbitration Rules and Procedures. Judgment on the award may be entered in any court having jurisdiction. This clause will not preclude the Parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction, including without limitation those for injunctive relief. In resolving the dispute, the arbitrator will apply the substantive laws of the State of Virginia or the United States where applicable. The arbitrator will have authority to award attorneys' fees, costs, and expenses to the prevailing Party. Notwithstanding the prior, Company agrees to pay for the cost of the arbitration itself. **THE PARTIES UNDERSTAND THAT BY AGREEING TO ARBITRATE DISPUTES UNDER THIS SECTION 6 THEY ARE GIVING UP CERTAIN RIGHTS OTHERWISE AFFORDED TO THEM BY CIVIL COURT ACTIONS, INCLUDING BUT NOT LIMITED TO THE RIGHT TO A JURY TRIAL.**

Dkt. 19, Ex. A at 8 (emphasis in original).

Plaintiff contends that the employment agreement's severability and attorneys' fees provisions contribute to the arbitration provision being unenforceable. Article V, Section 5, the severability provision, states:

> If any provision of this Agreement is held to be illegal, invalid, or unenforceable, that provision is fully severable and this Agreement will be construed and enforced as if the illegal, invalid, or unenforceable provision had never been a part of it, with the remaining provisions remaining in full force and effect. Furthermore, in place of any illegal, invalid, or unenforceable provision, there will be added automatically as a part of this Agreement a provision as similar in terms to the questioned provision as possible and still be legal, valid, and enforceable.

*Id.* The attorney's fees provision, as presented in Article V, Section 7 of the employment agreement, dictates:

> The non-prevailing Party in arbitration or any judicial or other legal proceeding for breach or enforcement of this Agreement will be fully responsible for and pay the prevailing Party's reasonable attorneys' fees, costs, and expenses, including, without limitation, those incurred preliminary to the institution of any action or proceeding, to quantify or obtain recovery of the amount of such recoverable attorneys' fees, costs, or expenses, and those incurred in connection with any confirmation or appellate proceedings arising from any such action or proceeding. The Parties specifically agree that the determination of any attorneys' fees, costs, or expense awards permitted will not be limited by any attorney fee schedule or method of computation of fees or definition of recoverable costs established by statute or court rule.

*Id.* at 9.

As Plaintiff also argues that Defendant has waived its right to compel arbitration, the Court notes the employment agreement's waiver provision, Article V, Section 4: "Any waiver for breach of this Agreement must be in writing and signed by the Party against whom the waiver is being enforced. The waiver of any such breach will not operate or be construed as a waiver of any other or subsequent breach."[1] *Id.* at 8.

### III. LEGAL STANDARD

#### a. Treating a Motion to Dismiss Because of Arbitration Agreement as a Motion to Stay Litigation and Compel Arbitration

The Fourth Circuit has indicated that a party's motion to dismiss because of an arbitration agreement should be treated as a motion to stay litigation and compel arbitration. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001). The Circuit recognized that a "hypertechnical reading" of a motion to dismiss in favor of arbitration "would be inconsistent with the 'liberal federal policy favoring arbitration agreements.'" *Id.* at 710 (quoting *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)); *see also Green v. Zachry Indus., Inc.*, 36 F. Supp. 3d 669, 627 (W.D.Va. 2014). The Court thus construes the motion to dismiss, Dkt. 19, as a motion to stay litigation and compel arbitration

#### b. Compelling Arbitration through the Federal Arbitration Act (FAA)

The Federal Arbitration Act ("FAA") establishes a presumption of validity for arbitration agreements, the overarching federal policy regarding arbitration, and the procedural guidelines for litigating arbitration disputes. *See* 9 U.S.C. § 1 *et seq*.

---

[1] The agreement has a separate waiver provision for class actions, Section 6(b), *id.* at 8–10, which is not germane to this case.

Under the FAA, a written agreement to submit a dispute to arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The United States Supreme Court has acknowledged the presumptive validity of arbitration agreements and reaffirmed that the FAA "reflects an emphatic federal policy in favor of arbitral dispute resolution." *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530, 533 (quoting *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (per curiam)) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985), internal quotation marks omitted); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Further, the Court has "recognized that federal statutory claims can be appropriately resolved through arbitration, and [has] enforced agreements to arbitrate that involve such claims," *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000), including statutory discrimination claims. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (ADEA claims); *see also Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678 (4th Cir. 2020) (reversing a district court's denial of a motion to compel arbitration of plaintiff's Title VII claims). The same is true for state law claims. *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984) ("In enacting § 2 of the [FAA], Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.").

The FAA allows parties subject to an arbitration agreement to "petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. If a suit has already been brought in circumvention of an arbitration agreement, the FAA instructs courts to stay the action for "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3.

In relation to the interpretation of an arbitration agreement, the FAA establishes "as a matter of federal law, [that] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

### c. Fourth Circuit's *Adkins* Test to Compel Arbitration

The Fourth Circuit follows a four-element test for determining whether a party can compel arbitration under the FAA, put forward in *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). The *Adkins* test requires: (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute." *Id.* (citing *Whiteside v. Teltech Corp.,* 940 F.2d 99, 102 (4th Cir.1991)).

### d. Compelling Arbitration through State Law

Virginia law takes a similar approach to the FAA. Under Virginia Code § 8.01-581.01, "[a] written agreement to submit any existing controversy to arbitration of a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract." Regarding employment agreements, the above provision "also applies to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement," though with a caveat related to "the

employment or terms and conditions of employment of any officer or employee of the Commonwealth." *Id.*

IV. ANALYSIS

Plaintiff's complaint meets the four-element *Adkins* test. There is (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute." *Adkins*, 303 F.3d at 500–01 (citing *Whiteside,* 940 F.2d at 102). However, the Plaintiff argues that the severability provision and attorneys' fees provision void the contract, therein making the arbitration provision inapplicable. Dkt. 24 at 5–9. Plaintiff also argues that Defendant waived its right to compel arbitration. *Id.* at 9–10. But the severability provision and attorneys' fees provisions are severable from the contract, and Defendant has not waived its right to compel arbitration. Thus, the arbitration agreement is enforceable.

A. **Mutual Assent and Contract Validity for the Employment Agreement**

"Whether an agreement to arbitrate was formed is a question of 'ordinary state law-principles that govern the formation of contracts.'" *Rowland v. Sandy Morris Fin. & Est. Plan. Servs., LLC*, 993 F.3d 253, 257 (4th Cir. 2021) (quoting *Hill v. Peoplesoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005)). The FAA designates that it is a court's "obligation to determine whether a contract was formed." *Id.* at 258.

For a contract to be formed under Virginia law, there must be (1) acceptance of an offer, (2) valuable consideration, (3) and mutual assent. *E.g.*, *Snyder-Falkinham v. Stockburger*, 457

S.E.2d 36, 39 (Va. 1995); *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007). To determine the existence of mutual assent, which is the formation element at issue in this case, courts consider whether an agreement exists between the parties "exclusively from those expressions of their intentions which are communicated between them," "judged by a reasonable standard [as to whether they] manifest an intention to agree." *Lucy v. Zehmer*, 84 S.E.2d 516, 522 (1954). For a contract to be enforceable, it must be "established with reasonable certainty." *Dodge v. Trustees of Randolph-Macon Woman's Coll.*, 661 S.E.2d 801, 803 (Va. 2008) (citing *Smith v. Farrell*, 98 S.E.2d 3, 7 (1957)). Reasonable certainty entails that a contract is "sufficiently definite to enable a court to give the contract an exact meaning, and the contract must obligate the contracting parties to matters that are definitely ascertained or ascertainable." *Id.* (citing *Smith*, 98 S.E.2d at 7).

Plaintiff argues that there is no mutual assent to the arbitration provision in the employment agreement and thus no valid contractual relationship between the parties as to the provision. Dkt. 24 at 5–6. Plaintiff puts forward this argument by claiming the agreement's severability provision renders the contract invalid. *Id.* at 6. Plaintiff argues that the severability provision "eviscerates any certainty of contractual terms by purporting to permit unlimited and 'automatic' amendment of *any* term found to be unenforceable." *Id.* According to Plaintiff, the overreach of this provision "prevent[ed] a meeting of the minds on the exact and definite terms of the Agreement in a way that any adjudicator can discern under Virginia law." *Id.*

"Severability clauses are valid – but only to the extent applying the severability clauses do[es] not violate Virginia's prohibition concerning blue-penciling," i.e., the rewriting of contract provisions after contract acceptance. *Metis Group, Inc. v. Allison*, 2020 WL 8813756, at *6, No. CL 2019-10757 (Va. Cir. Jan. 8, 2020) (unpublished); *Reistroffer v. Person*, 439 S.E.2d

376, 379 (Va. 1994); *Lanmark Tech., Inc. v. Canales*, 454 F. Supp. 2d 524, 529 (E.D. Va. 2006) (citing *Pais v. Automation Prods.*, 1995 WL 17049090, at *7, No. 25273-RF (Va. Cir. Apr. 17, 1995) ("[T]here is no authority for courts to ''blue pencil' or otherwise rewrite the contract' to eliminate any illegal overbreadth.")). Further, "a provision integral to the parties' agreement cannot be severed and one the parties intended to make severable is not integral." *Schuiling v. Harris*, 747 S.E.2d 833, 836 (Va. 2013).

"In Virginia, unenforceable provisions may be severed from a contract and the remainder of the contract enforced." *Daston Corp. v. MiCore Solutions, Inc.*, 2010 WL 7375597, at *5, No. CL-2010-9318 (Va. Cir. July 30, 2010) (internal citation omitted). And the Fourth Circuit has recognized that district courts must consider whether severance of an unenforceable provision, "rather than invalidation of the arbitration agreemen[t], would be the appropriate remedy." *In re Cotton Yarn Antitrust Litigation*, 505 F.3d 274, 292 (4th Cir. 2007) (internal citations omitted).

It is true that "[w]hile severing an unenforceable clause is expressly authorized by the Agreement, and is thus enforcing the Agreement as written, changing the language of an otherwise unenforceable clause to make it enforceable would be rewriting the Agreement, which exceeds the court's authority." *Omnisec Int'l Investigations, Inc. v. Stone*, 2019 WL 3892839, at * 7 n.6, CL 2018-6368 (Va. Cir. Mar. 26, 2019). Thus, the Court must consider how a reasonable person would interpret the severability provision's statement that provides

> [i]f any provision of this Agreement is held to be illegal, invalid, or unenforceable, that provision is fully severable and this Agreement will be construed and enforced as if the illegal, invalid, or unenforceable provision had never been a part of it, with the remaining provisions remaining in full force and effect . . . .

Dkt. 19, Ex. A at 8. A reasonable reader would interpret this language as meaning the parties agreed to severability of provisions even within this paragraph. The agreement nowhere indicates

otherwise. Thus, Defendant has not asked the Court to rewrite any contractual language and the terms allowing for rewriting could be severed under the agreement's own terms.

The Court severs the portion of the severability provision that allows for automatically adding "a provision as similar in terms to the questioned provision as possible." Dkt. 19, Ex. A at 8. Thus, this provision's existence does not render the entire contract unenforceable. Both parties indicated mutual assent by signing the employment agreement, *id.* at 10, therein agreeing to the terms as written. The Court need not worry about a future concern of blue-penciling at this time,

### B. Contravening Fee-Related Public Policy

Plaintiff also argues that the attorneys' fees provision in the agreement "violates the public policy in Title VII against assessment of fees against an unsuccessful claimant as a matter of course," therein rendering the agreement void. Dkt. 24 at 8. But this provision also must be severed.

Plaintiff recognizes that "[a]lthough parties possess broad latitude to specify the rules under which their arbitration will be conducted, they must preserve the ability to assert federal statutory causes of action so that 'the statute[s] will serve both [their] remedial and deterrent function[s]." *Hengle v. Treppa*, 19 F.4th 324, 334–35 (4th Cir. 2021), *cert. dismissed sub nom. Asner v. Hengle*, 142 S. Ct. 2093 (2022), and *cert. dismissed*, 142 S. Ct. 2093 (2022) (citing *Gilmer*, 500 U.S. at 28) (quoting *Mitsubishi Motors*, 473 U.S. at 637)). Plaintiff argues that the employment agreement's arbitration provision violates the U.S. Supreme Court's holding that "a district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 421

(1978). Meanwhile, a plaintiff prevailing under Title VII "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).

Plaintiff further argues that the attorneys' fees provision is unenforceable under Virginia law because the Virginia Values Act only entitles a plaintiff to an award of attorney's fees. Va. Code § 2.2-3908.B, and state law provides no right for fees to a prevailing defendant. Dkt. 24 at 9.

The Virginia Supreme Court has previously found attorneys' fees provisions unenforceable and severable. *Reistroffer*, 439 S.E.2d at 379 ("Clearly, the parties intended that the provision regarding attorney's fees would be severable and would remain in effect were [Defendant] successful in this litigation.").

The current attorney's fees provision is likely unenforceable. It ignores *Christiansburg Garment Co.* and *Hensley* by stating that "[t]he non-prevailing party in arbitration . . . will be fully responsible for and pay the prevailing Party's reasonable attorney's fees, costs, and expenses . . . .," regardless of whether the Plaintiff or Defendant prevails under a Title VII suit. Dkt. 19, Ex. A at 9. But this provision is severable, as, like the attorneys' fees provision in *Reistroffer*, 439 S.E.2d 376, it is not integral to the Parties' agreement. Thus, it does not invalidate the arbitration agreement. The Court severs the attorneys' fee provision and instructs any arbitrator to follow the traditional *Christiansburg Garment Co.* and *Hensley* attorneys' fee provision rules for the Title VII claim, as well as the relevant state rules governing state law claims.

**C. Defendant Has Not Waived Any Right to Compel Arbitration**

Finally, Plaintiff argues that Defendant has waived any right to compel arbitration. Dkt. 24 at 9–10. Plaintiff asserts that Defendant's "engagement of the discovery methods permitted under the Federal Rules but not under the arbitration rules specified in the Agreement has resulted in actual prejudice to Plaintiff and constitute[s] a waiver of [Defendant's] ability to compel arbitration even were the Agreement enforceable." *Id.* at 10. But Plaintiff's contention fails to meet the high standard for showing actual prejudice.

A party waives its right to compel arbitration when it "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (quoting *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 981 (4th Cir. 1985)). And "[e]ven in cases where the party seeking arbitration has invoked the 'litigation machinery' to some degree, '[t]he dispositive question is whether the party objecting to arbitration has suffered *actual prejudice*.'" *Id.* (internal reference omitted) (emphasis in original). Showing actual prejudice is a "heavy burden." *Patten Grading & Paving, Inc. v. Skanska USA Building, Inc.*, 380 F.3d 200, 205 (4th Cir. 2004) (quoting *MicroStrategy, Inc.*, 268 F.3d at 251 (internal quotations omitted), also citing *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)). A party does not waive its right to arbitrate by answering the merits of a complaint, asserting counter- and cross-claims, and engaging in pretrial discovery. *Developers Sur. and Indem. Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665, 673 (D. Md. 2010); *see also Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987) ("Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration."). But "delay and the extent of the moving party's trial-oriented activity are material factors in assessing a plea of prejudice." *Id.*

In terms of delay, the Fourth Circuit has held that "a delay of several months, without more, is insufficient to demonstrate the opposing party suffered actual prejudice." *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 703 (4th Cir. 2012) (considering six and a half months delay) (citing *Patten Grading & Paving, Inc.*, 380 F.3d at 205 (finding no inherent prejudice in a four-month delay); *Maxum*, 779 F.2d at 982 (finding same for a six-month delay); *cf. Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 343 (4th Cir. 2009) (finding default proper where litigation proceeded for more than two years before the moving party sought arbitration); *Fraser*, 817 F.2d at 252–53 (same for four-year delay)).

Plaintiff filed her initial complaint May 2, 2022. Dkt. 1. On August 22, 2022, Defendant filed a motion to dismiss the complaint because of Plaintiff's agreement to arbitrate. Dkt. 11. On September 16, 2022, Defendant motioned to withdraw the previous motion to dismiss filing, Dkt. 17. On the same day, it refiled a motion to dismiss because of Plaintiff's agreement to arbitrate. Dkt. 19. On September 22, 2022, Magistrate Judge Hoppe granted the motion to withdraw the original motion to dismiss. Dkt. 21. And on September 21, 2022, the parties filed a consent motion to stay discovery pending resolution of motion to dismiss in favor of arbitration, Dkt. 20, which Magistrate Judge Hoppe granted. Dkt 23. Thus, if considering only the refiled motion to dismiss because of Plaintiff's agreement to arbitrate, Dkt. 19, i.e., the latest possible filing to consider, Defendant moved to compel arbitration around four months after the case began. The Fourth Circuit has previously found no inherent prejudice in a delay around a four-month span. *Maxum*, 779 F.2d at 982. This Court thus recognizes no inherent prejudice to Plaintiff based on Defendant's delay in seeking arbitration.

Next, consider the moving party's trial-oriented activity, particularly discovery. In *MicroStrategy, Inc. v. Lauricia*, 268 F.3d at 252, the Fourth Circuit considered whether a party

correctly asserted waiver of the right to arbitrate. In determining that the moving party did not meet her burden of showing actual prejudice, the Fourth Circuit found it important that she "made no effort to establish what discovery would or would not be available to [the nonmovant] in an arbitration proceeding." *Id.* at 251. Instead, the moving party "simply assert[ed] that discovery is unavailable in arbitration and that she was therefore prejudiced by that fact that [nonmovant] obtained some discovery before seeking arbitration." *Id.*

Plaintiff argues that she has been prejudiced by discovery. She discusses that Defendant "served interrogatories, document requests, and requests for admissions on Plaintiff, both initially and then as amended." Dkt. 24 at 9. Plaintiff discusses that she "responded to the discovery and produced responsive documents in accordance with the Federal Rules." *Id.* Further, Defendant "never withdrew the discovery nor did it advise the Court of its service of discovery in its Motion to Stay Discovery." *Id.* And "[i]t relied on its discovery in support of its later withdrawn motion to dismiss." *Id.* Plaintiff further discusses that "[u]nder the rules directed by the Agreement, neither interrogatories, document requests, nor requests for admissions are provided for." *Id.* (internal reference omitted).

The arbitration provision states that "[t]he arbitration will be administered by JAMS under its Streamlined Arbitration Rules and Procedures." Dkt. 19, Ex. A, at 8. And Plaintiff argues that "[t]he JAMS Streamlined rules do not give the arbitrator the authority to permit [interrogatories, document requests, or admissions]." Dkt. 24 at 9.

JAMS Streamlined Rule 13 provides for discovery. JAMS Streamlined Rule 13(a) states: "[t]he necessity of additional information exchange shall be determined by the Arbitrator based upon the reasonable need for the requested information, the availability of other discovery options, and the burdensomeness of the request on opposing Parties and the witness." JAMS

Streamlined Arbitration Rules & Procedures (effective June 1, 2021), available at https://www.jamsadr.com/rules-streamlined-arbitration/ (last visited Oct. 12, 2022). Rule 13(b) states:

> As they become aware of new documents or information, including experts who may be called upon to testify, all Parties continue to be obligated to provide relevant, non-privileged documents, to supplement their identification of witnesses and experts and to honor any informal agreements or understandings between the Parties regarding documents or information to be exchanged. Documents that were not previously exchanged, or witnesses and experts that were not previously identified, may not be considered by the Arbitrator at the Hearing, unless agreed by the Parties or upon a showing of good cause.

*Id.* Under Rule 13(c), "[t]he Parties shall promptly notify JAMS when a dispute exists regarding discovery issues. A conference shall be arranged with the Arbitrator, either by telephone or in person, and the Arbitrator shall decide the dispute." *Id.* And, under Rule 13(d), "[i]n a consumer or employment case, the Parties may take discovery of third parties with the approval of the Arbitrator." *Id.* Thus, Plaintiff appears incorrect in asserting that "the JAMS Streamlined Rules do not give the arbitrator the authority to permit [interrogatories, document requests, or requests for admissions]." Dkt. 24 at 9.

The Fourth Circuit has recognized that discovery is not prejudicial when a moving party completed depositions "before any suggestions of arbitration had been made" and the party "did not claim that the discovery it had obtained would impede it in arbitration." *Fraser*, 817 F.2d at 252 (discussing *Maxum*, 779 F.2d 974). Here, of course, Plaintiff claims the discovery is prejudicial. Dkt. 24 at 9–10. Thus, this weighs against the party moving to compel arbitration.

But the Fourth Circuit has also held that "the party seeking arbitration will not 'lose its contractual right by prudently pursuing discovery in the face of a court-ordered deadline.'" *Patten Grading & Paving, Inc.*, 380 F.3d at 206 (quoting *Am. Recovery Corp.*, 96 F.3d at 96

(internal quotations omitted)). And the Court has held in favor of compelling arbitration when "[a]t the time of [movant's] motion to compel arbitration, the parties' discovery efforts were confined to the exchange of interrogatories and requests for production of documents; significantly, the parties had not noticed depositions." *Id.*

Further, the employment agreement states: "Any waiver for breach of this Agreement must be in writing and signed by the Party against whom the waiver is being enforced. The waiver of any such breach will not operate or be construed as a waiver of any other or subsequent breach." Dkt. 19, Ex. A at 9. There is no such signed waiver in the record.

"Because the written discovery conducted here was limited, the parties had not proceeded with time-consuming and expensive depositions, and [the non-moving party] demonstrates no resulting disadvantage," the Court finds that Plaintiff has not "carried its 'heavy burden' of establishing that it was prejudiced by the pre-trial activity conducted prior to [the] motion to compel arbitration." *Patten Grading & Paving, Inc.*, 380 F.3d at 206.

## V. CONCLUSION

Plaintiff's complaint meets the four-element *Adkins* test. There is (1) "the existence of a dispute between the parties"; (2) "a written agreement that includes an arbitration provision which purports to cover the dispute"; (3) "the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce"; and (4) "the failure, neglect or refusal of the [plaintiff] to arbitrate the dispute." *Adkins*, 303 F.3d at 500–01 (citing *Whiteside,* 940 F.2d at 102).

The portion of the severability agreement allowing for provisions of the agreement to be rewritten can be severed from the contract, as can the attorney's fees agreement, without voiding

the contact. Thus, the Court will sever these provisions. Defendant has not waived any right to compel arbitration. Thus, the arbitration agreement is enforceable. The Court will grant the motion to compel arbitration, Dkt. 19.

ENTERED this __14th__ day of October, 2022.

*[signature]*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE